## HUGHES TOOL CO. v. GILLCRAFT AVIATION CO. et al.

## SAME v. H. L. HARVILL DEVELOPMENT CO. et al.

### Civ. Nos. 3140, 3168.

District Court, S. D. California, Central Division.

Dec. 22, 1943.

Harris, Kiech, Foster & Harris, Ford W. Harris, Jr. and Ward Foster, all of Los Angeles, Cal., for plaintiff.

R. Bruce Murchison, of Los Angeles, Cal., for defendants Milton L. Gillespie, Wilma Gillespie, R. C. Crum, R. L. Mason and Gillcraft Aviation Co.

Joseph L. Lewinson, and Donald Armstrong, both of Los Angeles, Cal., for defendants Bartlett, Shellenberger, and Kolehmainen.

L. R. Martineau, Jr., Richard C. Heaton, Lyon & Lyon, and Richard F. Lyon, all of Los Angeles, Cal., for H. L. Harvill Development Co., H. L. Harvill Mfg. Co., and H. L. Harvill.

J. F. T. O'CONNOR, District Judge.

The above entitled actions were consolidated for trial.

#### Gillcraft, No. 3140

The first cause of action stated in the complaint is dismissed.

The court finds that the second and third causes of action are sustained by the evidence.

#### Harvill, No. 3168

The first cause of action stated in the complaint is dismissed. The court finds that the second and third causes of action are sustained by the evidence.

Confidential relationship between employer and employee is discussed in E. I. Du Pont de Nemours Powder Co. et al. v. Masland et al., 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016.

It is clear from the testimony that a large number of Hughes ammunition boosters were sold to the Government of

the United States in the prosecution of the war between July 5, 1942 and March 30, 1943. 1743 such boosters were purchased by the Government at a price exceeding $100 per unit. This clearly establishes the value and usefulness of the Hughes ammunition booster. The testimony shows that the plaintiff spent large amounts of money, employed skillful engineers, made many experiments, in order to perfect the booster. The evidence discloses that no ammunition boosters were sold by the defendants in either action. No evidence was introduced to show the profit, if any, made by the plaintiff from its sales of its boosters to the Government. It would be extremely difficult, in any event, to fix the profit, even if the figures were available in view of the federal statutes requiring negotiation of contracts and the right on the part of the Government to limit the profits. No manufacturer of war materials could possibly know what his profits will be until the Government has acted under the statute, and this is a wise provision of the law. It is true, as suggested in argument, that whatever profit remains would then be subject to excess profit taxes. That is a matter which is not before the court.

It must be conceded that the Hughes ammunition booster was successful in making a valuable contribution to the war effort. It is the announced policy of the Government to use any device or article, whether patented or un-patented, to be freely manufactured if such device or article will aid in the prosecution of the war. See chap. 634, 2d session, Public Law 768, 77th Congress (S. 2794), 35 U.S.C.A. § 89 et seq. An act to provide for adjusting royalties for the use of inventions for the benefit of the United States, in aid of the prosecution of the war, and for other purposes. Sec. 6 of said Act, 35 U.S.C.A. § 94, provides as follows:

"For the purposes of this Act, the manufacture, use, sale, or other disposition of an invention, whether patented or unpatented, by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government shall be construed as manufacture, use, sale, or other disposition for the United States and for the purposes of the Act of June 25, 1910, as amended (40 Stat. 705; 35 U.S.C. 68), the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States."

This section was called to the attention of the court during argument of counsel, and its application to the present action insisted upon. The court pointed out that the section was limited to inventions "described in and covered by a patent of the United States." The defendants requested the Attorney General to interpret the section and the record shows that the Attorney General believed the omission pointed out by the court was unintentional on the part of Congress.

Section 2 of the Act, 35 U.S.C.A. § 90, provides the forum.

This statute is discussed in Western Electric Co., Inc., v. Hammond, 1 Cir., 135 F.2d 283.

This court would not be justified in interfering in any way which might delay the termination of the present conflict, and to make permanent the injunction could not be justified. Many thousands of men are sacrificing their lives that our Government might live. The court happens to know that there are those near and dear to counsel in this action in the battle zones and to them the sacrifice of all their worldly goods would be an agreeable exchange if it could insure the return of those loved ones.

Congress has made a serious effort to protect property rights even if, for a temporary period, restitution may be delayed. A short time ago (December 2, 1943) the United States Circuit Court of Appeals for the Ninth Circuit handed down its opinion in Toyosaburo Korematsu v. United States of America, 140 F.2d 289, and in this opinion Circuit Judge Denman said:

"War always causes some cruel treatment of the innocent, the more so global war. It is customary for the Supreme and other federal courts to comment, where claims of oppression arising from Congressional legislation are not regarded as making the legislation invalid, that the claimant should look to Congress for his remedy. It is within that practice to state that where, as a war necessity, such wrongs are deliberately committed

350

upon its citizens by a civilized nation, ordinary decent standards require that compensation must be made as in the case of our broken treaties with another Mongoloid group, the American Indians. One properly may hope that it will not be delayed (because it involves the admission of the wrong) until it is given to descendants many generations removed from their wronged ancestors."

The evidence clearly establishes that none of the defendants in the above entitled actions have sold to the Government any ammunition boosters and, therefore, there is no damage to the plaintiff. The court, therefore, expresses no opinion as to future action on the part of the plaintiff should the defendants, or any of them, manufacture and sell to the Government ammunition boosters made from the plans, specifications and drawings of the plaintiff's ammunition booster, nor does the court express any opinion as to whether such action would properly come before this court or before the Court of Claims.

Plaintiff will prepare findings of fact and conclusions of law in accordance with this opinion.

The preliminary order and preliminary injunction are set aside and dissolved.